UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-62467-WPD

COLONY INSURANCE COMPANY,

Plaintiff,

vs.

THE COURTYARDS AT HOLLYWOOD STATION HOMEOWNER'S ASSOCIATION, INC; LUISA ANTONIA GUIDO, individually, and as Personal Representative of the Estate of Ursula Maria Alvarez, and STEVEN RODRIGUEZ, as Personal Representative of the Estate of Julio E. Rodriguez, Jr.

Defendants.
_____/

**COLONY'S MOTION FOR FINAL SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Colony Insurance Company, pursuant to Federal Rule of Civil Procedure 56, and the applicable Local Rules, hereby moves the Court to enter final summary judgment in its favor. As Colony shows below, there is no genuine dispute as to any material fact and Colony is entitled to judgment as a matter of law.

1. In conjunction with this Motion, Colony has separately filed its Statement of Material Facts in support of its Motion. In this Motion Colony will refer to policy provisions and allegations in Defendant Luisa Antonia Guido's underlying complaint that are identified and quoted in full in its Statement of Facts.

2. Colony has no duty to defend Defendant The Courtyards at Hollywood Station Homeowners' Association, Inc. ("Courtyards HOA") with respect to the underlying action filed by Guido against Courtyards HOA, or with regard to any claims or action brought against

Courtyards HOA by Rodriguez, relating to the deaths of Ursula Alvarez and Julio E. Rodriguez, Jr., allegedly resulting from the seepage of carbon monoxide into rental condominium units. The Colony Policy contains a Total Pollution Exclusion which, when compared to the allegations of Guido's complaint, clearly applies to preclude a duty to defend. Carbon monoxide is a pollutant within the meaning of the Total Pollution exclusion.

3. Under Florida law, when an insurer has no duty to defend it cannot have a duty to indemnify. Because Colony has no duty to defend Courtyards HOA, as a matter of law, it correspondingly has no duty to indemnify it with regard to the above claims or actions.

4. No exception to the Total Pollution Exclusion applies, and no defenses preclude the entry of summary judgment in favor of Colony.

5. Colony does not waive any defenses, grounds, or arguments not presented in this Motion. Based upon this Motion and memorandum of law in support, the Statement of Material Facts, and other filings in the record, there is no genuine dispute as to any material fact and Colony is entitled to final judgment as a matter of law.

WHEREFORE Colony Insurance Company respectfully moves the Court to grant Colony's Motion for Final Summary Judgment and declare that the Policy issued to The Courtyards at Hollywood Station Homeowners' Association, Inc. provides no coverage for the incident that resulted in the deaths of Ursula Alvarez and Julio E. Rodriguez, Jr., for reimbursement of all costs incurred by Colony in providing Courtyards HOA with a defense to the lawsuit filed by Luisa Antonia Guido, and for such other relief as this Court deems appropriate.

## MEMORANDUM OF LAW

I. **APPLICABLE STANDARDS**

   a. **Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one that "might affect the outcome of the suit." *Id*. Fact disputes that are irrelevant to the legal question will not be considered. *Id*. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Finally, the applicability of a pollution exclusion is a matter of law that can be properly resolved on the pleadings. *See Maxum Indem. Co. v. Fla. Constr. Servs., Inc.*, 59 F.Supp.3d 1382, 1385 (M.D. Fla. 2014).

   b. **General Principles of Insurance Law**

An insurer's duty to defend its insured against a legal action arises when the complaint against the insured alleges facts that fairly and potentially bring the suit within policy coverage. *See Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005). The insurer's duty to defend is determined strictly from the allegations of the complaint against the insured. *Id*. at 443.  Such duty is <u>not</u> determined by the actual facts, or the insured's version of the facts. *See id*.

Further, a finding that an insurer has no duty to defend its insured forecloses any possible obligation that the insurer might have a duty to indemnify the insured. Since an insurer's duty to

defend is broader than its duty to indemnity, where an insurer has no duty to defend an insured, it correspondingly has no duty to indemnify the insured. *See Allstate Ins. Co. v. Safer,* 317 F. Supp. 2d 1345 (M.D. Fla. 2004); *WellCare of Fla., Inc. v. American Int'l. Specialty Lines Inc. Co.*, 16 So.3d 904, 906 (Fla. 2d DCA 2009).

It is well-settled that the construction of an insurance policy is a question of law to be determined by the court. *See Allstate Ins. Co. v. Swain*, 921 So.2d 717, 719 (Fla. 3d DCA 2006). However, construction is only necessary if the insurance provision in question is found to be ambiguous. *See Westinghouse Elec. v. Prudential Ins*., 547 So.2d 721, 722 (Fla. 1st DCA 1989). A policy provision is not ambiguous simply because it is complex or requires analysis. *See Harrington v. Citizens Prop. Ins. Corp*., 54 So.3d 999, 1002 (Fla. 4th DCA 2011). Moreover, it has been held that pollution exclusions are clear and unambiguous. *See Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Ins. Co.,* 711 So.2d 1135, 1138 (Fla.1998). In the absence of an ambiguity, a policy must be given effect as written. *Harrington*, 54 So.3d at 1001. Courts may not rewrite insurance contracts. *Id*. at 1002.

Further, the "lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." (quoted case omitted) *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003). Insurance policy terms "must be given their everyday meaning and should be read with regards to ordinary people's skill and experience." (citation omitted) *Harrington*, 54 So.3d 999, at 1003. That is, terms used in an insurance policy are to be given their plain meaning as understood by the "man-on-the-street." *See State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 244 (Fla. 3d DCA 2002). In addition, the plain meaning of a policy term controls; an insured's reasonable belief is irrelevant. *See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc*., 94 So. 3d 541, 549 (Fla. 2012).

The insured has the burden to prove that the insurance policy covers a claim against it. *See East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. 3d DCA 2005). Once the insured shows coverage, the burden shifts to the insurance carrier to prove that an exclusion applies to the coverage. *Id*. If there is an exception to the exclusion, "the burden once again is placed on the insured to demonstrate the exception to the exclusion." *Id*.

The Defendants are apparently relying upon an exception to the Total Pollution Exclusion. As such, it is the Defendants, not Colony, who have the burden to show that the exception to the Total Pollution Exclusion applies, as Defendants are the ones who are seeking coverage.

## II.    ARGUMENT

### A.    The Total Pollution Exclusion Applies to Preclude Coverage

Courts applying Florida law have clearly held that pollution exclusions in insurance policies preclude coverage for injuries or damages because of carbon monoxide. *See*, *e.g.*, *Composite Structures Inc. v. Cont'l Ins. Co.*, 560 Fed. Appx. 861, 2014 U.S. App. LEXIS 5258, 2014 WL 1069253 (11th Cir. March 20, 2014) (unpublished) (the claimant's complaint "alleged loss or damage resulting from exposure to excessive amounts of carbon monoxide and carbon monoxide fumes; this loss or damage falls squarely within the pollution exclusion, and Marlow does not argue otherwise."); *Admiral Ins. Co. v. Feit Management Co.*, 321 F.3d 1326 (11th Cir. 2003). In *Maxum Indem. Co. v. Fla. Constr. Servs., Inc.*, 59 F.Supp.3d at 1385-86, the court noted:

> Finally, Hawk's complaint specifically and solely alleges that her death was caused by "a fatal amount of carbon monoxide" that penetrated the common tenant separation wall. Doc. 1–2 ¶ 28. As the Eleventh Circuit and many other courts have held, and as Defendants do not dispute, carbon monoxide is a pollutant. See, e.g.*, Admiral Ins. Co. v. Feit Management Co.*, 321 F.3d 1326, 1327–28 (2003).
>
> In sum, it is clear from the pleadings that any liability that could attach to Florida Construction Services in the underlying action would stem from bodily injury that occurred, "in whole or in part," from the actual or alleged "discharge, dispersal, seepage, migration, release, or escape of pollutants." Because the Policy clearly and

unambiguously excludes such coverage, it must be applied as written, *see Swire Pac. Holdings, Inc. v. Zurich Ins. Co*., 845 So.2d 161, 165 (Fla.2003). As the pleadings show a lack of coverage, there is no obligation for Maxum to provide a defense to Florida Construction Services. Therefore, Maxum is entitled to judgment on the pleadings that it has no duty to defend Florida Construction Services in the underlying action.

Numerous cases from outside Florida agree. *See*, *e.g.*, *Church Mut. Ins. Co. v. Clay Ctr. Christian Church*, 746 F.3d 375 (8th Cir. 2014) (coverage was precluded for the injuries plaintiffs suffered because of their exposure to carbon monoxide, as carbon monoxide constituted a "pollutant" under the policies' pollution exclusions; testimony of the plaintiffs' expert witness regarding whether carbon monoxide was an "irritant" or "contaminant" was properly excluded because the interpretation of an insurance policy was a question of law for the court, not a question of fact); *Nautilus Ins. Co. v. Country Oaks Apartments Ltd*., 566 F.3d 452 (5th. Cir. 2009) (the insurer had no duty to defend, and consequently no duty to indemnify, where plaintiff alleged that unusually high levels of carbon monoxide accumulated in an apartment after furnace vent became obstructed; those allegations clearly involved injuries resulting from a "pollutant" within the meaning of the policy's absolute pollution exclusion); *Continental Cas. v. Advance Terrazzo & Tile*, 462 F.3d 1002 (8th Cir. 2006) (absolute pollution exclusion in the policies precluded a duty to defend because the exclusion unambiguously applied to an injury resulting from the release of carbon monoxide from the operation of terrazzo grinders); *United States Fid. & Guar. Co. v. Lehigh Valley Ice Arena, Inc*., 121 Fed. Appx. 976 (3d Cir. Feb 18, 2005) (no coverage for injuries sustained as a result of the inhalation of carbon monoxide and other gases emanating from the incomplete combustion of propane in a malfunctioning Zamboni machine; no exception to the exclusion applied); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1000 (4th Cir.1998) (applying Maryland law) (noting the policy language defining "pollutants" as "smoke, vapors, soot, fumes, acids, sounds, alkalis, chemicals, liquids, solids, gases, thermal pollutants and all other

irritants or contaminations," and holding that "carbon monoxide — whether considered a 'fume,' 'vapor,' or 'gas' — plainly falls within this policy definition of 'pollutant.'"); *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628 (Minn. 2013) (holding that carbon monoxide released from a negligently installed boiler was a "pollutant" that was subject to the absolute pollution exclusion in the insurance policy); *Reed v. Auto-Owners Ins. Co.,* 667 S.E.2d 90, 284 Ga. 286 (Ga. 2008) (a residential tenant sued her landlord for carbon monoxide poisoning allegedly caused by the landlord's failure to keep the rental house in good repair; the pollution exclusion precluded coverage because carbon monoxide was found to be an "irritant" or "contaminant"); *Bituminous Cas. v. Sand Livestock Systems*, 728 N.W.2d 216 (Iowa 2007) (the pollution exclusion unambiguously excluded coverage for a death caused by carbon monoxide that was emitted from a propane gas heater); *Colony Ins. Co. v. Victory Constr. LLC*, 239 F.Supp.3d 1279 (D. Or. 2017) (no coverage for injuries resulting from the negligence in the installation and ventilation of a natural gas swimming pool heater or negligence in failing to warn of the risks of carbon monoxide poisoning associated with operating the heater in an insufficiently ventilated area; carbon monoxide was either an "irritant" or "contaminant" and, thus, is a "pollutant" under the policy); *Shaw v. Liberty Mut. Fire Ins. Co.*, 2016 U.S. Dist. LEXIS 17626, WL 561409, at *4 (M.D. Fla. Feb. 12, 2016) (applying Texas law) ("while carbon monoxide is a naturally occurring gas that is present in the air we breathe, it is also an irritant, contaminant, and toxic at the level of concentration experienced by the [plaintiffs.] Therefore, carbon monoxide clearly and unambiguously fits within the definition of a 'pollutant' under the Policy.").

In determining whether the Total Pollution Exclusion applies, one must compare the terms of that exclusion to the facts alleged by Guido in her complaint filed in the underlying action. In

making that comparison, the only reasonable conclusion is that the Total Pollution Exclusion applies to preclude coverage.

As noted in Colony's Statement of Facts, the Total Pollution Exclusion provides that the insurance does not apply to "bodily injury" "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The Policy defines "pollutants" as a "solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Based upon the case law cited above, there can be no dispute that carbon monoxide is a pollutant within the meaning of the Total Pollution Exclusion.

Turning to the allegations of Guido's complaint, it alleges, among other things, the following: "[o]n August 7, 2017, gases believed to have come from a motor-vehicle recently driven into and stationed in the attached enclosed car garage emitted deadly carbon monoxide gases which became airborne and penetrated the interior of the subject Unit." (paragraph 23), and "[a]s a direct and proximate cause of the [Courtyards HOA]'s negligence, Decedent died of carbon monoxide poison when this deadly gas seeped into the Unit unbeknownst to her causing her demise." (paragraph 38) (Am. Compl., Exh. A). Based upon the facts alleged in Guido's complaint, it cannot be disputed that the alleged injuries and deaths would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of carbon monoxide.

While it is clear that the Total Pollution Exclusion applies, the analysis is not yet complete. The Defendants take the position that an exception to the Total Pollution Exclusion applies. As shown in the next section, however, the Defendants' position has absolutely no merit.

**B.     No Exception to the Total Pollution Exclusion Applies**

The Defendants contend that the following exception to the Total Pollution Exclusion applies, thereby rendering the exclusion inapplicable:

> 'Bodily injury' if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; . . .

For convenience, Colony will refer to that exception as the "HVAC equipment" exception, an exception which has no relevance whatsoever in the case at bar.

By its own terms, the HVAC equipment exception only applies if **all** of the following conditions are met:

1. the "bodily injury" must have been sustained within a building;
2. the building must be owned by or occupied by, or rented or loaned to Courtyards HOA; AND
3. the "bodily injury" must have been caused by fumes produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

In reviewing the allegations of Guido's complaint, it is clear that requirement 2 and 3 cannot be met.

Requirement 2 cannot be met because the complaint does not allege that Courtyards HOA owns or occupies the subject building, or that the building has been rented or loaned to Courtyards HOA. *See generally Continental Cas. v. Advance Terrazzo & Tile*, 462 F.3d at 1010. Cir. 2006) (noting that under similar policy language, the exception required that the insured own the building in question).

Colony's Motion for Summary Judgment and Memorandum of Law in Support – Page 9 of 15

Requirement 3 cannot be met because Guido alleges that the carbon monoxide was produced by or originated from a motor vehicle in the garage, not from heating, cooling or dehumidifying equipment. That is made clear by allegations such as the following contained within Guido's complaint:

> 23. On August 7, 2017, and on all days before said date, Decedent resided in the subject Unit. On August 7, 2017, gases believed to have come from a motor-vehicle recently driven into and stationed in the attached enclosed car garage emitted deadly carbon monoxide gases which became airborne and penetrated the interior of the subject Unit.
>
> 24. This violent and deadly killer seeped into the AC ducts or vents causing the gas to be distributed throughout the townhome and into the second level bedroom killing the Decedent who unknowingly ingested the deadly gas.

There are absolutely no allegations even suggesting that the carbon monoxide was produced by or originated from heating, cooling or dehumidifying equipment.

With regard to this issue, the Court has the benefit of the 11th Circuit Court's decision in *Admiral Ins.*, 321 F.3d. In that case the court, under similar, although not quite as strong facts, held that a heating equipment exception did not apply.

Similarly to the case at bar, *Admiral Ins.* involved the potential application of an exception to a pollution exclusion relating to purported coverage for death and injuries caused by carbon monoxide fumes that flowed through an HVAC (heating, ventilating and air conditioning) system into individual apartments. The policy in that case excepted any "injury or damage sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building."[1] *Id.* at 1328. Before addressing that exception, the *Admiral Ins.* court noted that there was "no

---

[1] The Colony exception to the Total Pollution Exclusion also contains the requirement that the subject building be "owned or occupied by, or rented or loaned to, any insured," a requirement apparently not found in the *Admiral Ins.* policy.

dispute that, absent the exception, the pollution exclusion clause would exclude coverage for the injuries at issue in this case." *Id*.

The claimants in *Admiral Ins.* contended that the exception applied because the carbon monoxide fumes:

> entered the apartments from "equipment used to heat that building" because the fumes came from (meaning "through" or "by way of") each apartment's air handler, which is part of the heating (and cooling) system of the apartments.

*Id*. Admiral, on the other hand, contended that the exception did not apply because it was undisputed "that the toxic fumes came from (meaning originated in) the hot water heater, which all agree is not part of the 'equipment used to heat that building.'" *Id.* According to the court, the issue was simple "[w]hat does 'from' mean in the context of this insurance policy. Did the fumes come from equipment used to heat the building?" *Id.*

The court noted that the claimants were interpreting the word "from" as used in the exception to mean "through" or "by way of." In rejecting such interpretation, the court stated:

> However appealing this argument might be, we must decline to accept it. We have no doubt that the language of the policy's pollution exclusion exception, given its ordinary and plain meaning, intends to resurrect coverage for injuries caused by pollutants **'originating' in or 'produced' by the building's heating equipment**. [footnote omitted] Even [the claimant] recognized at oral argument that had the carbon monoxide fumes entered the apartments through their front doors, we would not say that the fumes came 'from' the door. In answer to the question, 'Where did those fumes come from?' we would respond, 'The hot water heater.'
>
> We find support for this conclusion in the language of the pollution exclusion combined with the exception. The policy excludes coverage for injuries or property damage arising out of the 'discharge, dispersal, seepage, migration, release or escape of pollutants,' unless these pollutants are from equipment used to heat the building. Since the pollutants in this case were discharged, dispersed, released or escaped from the hot water heater, which all agree is not used to heat the building, the exception does not apply and coverage is excluded for the resulting injuries.
>
> Furthermore, the language of the exception, itself, makes clear that it intends to provide coverage only for fumes and vapors that originate in the equipment used to heat the building, and not all fumes, whatever the source.[footnote omitted] If toxic

> fumes escaping from anywhere — not just the building's heating equipment — were covered so long as they somehow make their way into a building's heating and air conditioning ducts, then virtually all incidents involving fumes and vapors would be covered since it would be the rare case in which such pollutants did not make their way into the building's ventilation system. To interpret the exception in this way would cause it to virtually swallow up the pollution exclusion itself.

(emphasis added) *Id*. at 1329-30

The instant case presents an issue which is much easier to resolve than the issue in *Admiral Ins*., because the exception to the Colony Total Pollution Exclusion is much narrower than the exception at issue in *Admiral Ins*. In *Admiral Ins*. the court was initially faced with the need to interpret the meaning of the word "from" as used in the exception. It ended up finding that the plain meaning of "from" was "originating in" or "produced by." *Id.* at 1329. Such step is unnecessary in the case at bar, because the exception to the Total Pollution Exclusion already uses the phrase "produced by or originating from" rather than "from."

The instant issue is also easier to resolve because while the carbon monoxide in *Admiral Ins.* did not originate from "equipment used to heat that building," but rather from a hot water heater, the carbon monoxide fumes in the case at bar allegedly did not even originate from equipment that was part of any building, but rather **from a motor vehicle that was recently driven into and stationed in the garage**. (underlying compl. ¶ 23). Thus, there can be no dispute that the carbon monoxide fumes which allegedly caused the death in the Guido action did not originate from and were not produced by "equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use."

Finally, it is easier to resolve the issue in this case because the Colony exception contains the added requirement that the subject building be "owned or occupied by, or rented or loaned to, any insured," as discussed above.

Another case worth noting is *Lehigh Valley Ice Arena*, in which the court addressed the exception to the pollution exclusion for "[b]odily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building." The court noted it was clear that, in order for the exception to be applicable, "the heating system itself must have caused the pollution." Because the heating system in that case did not release the injurious pollutants, but merely served as a "conduit," the exception did not apply. The court so held even though it was alleged that the installation of a dimensionally incorrect filter in the heating system allowed the pollutants to become concentrated within the locker room.

Carbon monoxide fumes are never produced by or originate from AC vents themselves—such fumes have to be produced by or originate from something else. In this case, that "something else" allegedly was a motor vehicle. The fact that an AC vent may have acted as a conduit is not enough. For example, if a gate were being painted in the parking lot of the townhome building, and fumes from the paint somehow seeped into the AC vent, no one could seriously argue that the fumes "originated from" the AC vent. As the court noted in *Admiral Ins.,* such interpretation would be unreasonable, and would swallow up the exclusion.

The Defendants have the burden to establish applicability of the HVAC exception to the Total Pollution Exclusion. *See East Florida Hauling, Inc.*, 913 So.2d at 678.  Clearly they cannot meet their burden.

### III.     CONCLUSION

Based upon this Motion, and memorandum of law in support, the Statement of Material Facts, and other filings in the record, there is no genuine dispute as to any material fact and Colony is entitled to the relief it seeks in its Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by the CM/ECF filing system this 27th day of April, 2018 on all counsel of record on the Service List below.

/s/Larry I. Gramovot
Larry I. Gramovot, Esq.
Florida Bar Number: 273570
1400 Village Square Blvd., No. 3-405
Tallahassee, FL 32312-1231
Email: Larry@lig-law.com
phone (850) 325-1914
Attorney for Colony Insurance Company

**SERVICE LIST**

1. DORTA LAW
   334 Minorca Avenue
   Coral Gables, Florida 33134
   Telephone: 305-441-2299
   Telecopier: 305-441-8849
   grd@dortalaw.com
   file@dortalaw.com
   *Attorneys for Luisa Antonia Guido*

2. THE LAW OFFICES OF
   BERMAN & BERMAN, P.A.
   Post Office Box 272789
   Telephone: 561-826-5200
   Fax: 561-826-5200
   service@thebermanlawgroup.com
   *Attorneys for Steven Rodriguez*

3. PATINO & ASSOCIATES, P.A.
   113 Almeria Avenue
   Coral Gables, FL 33134
   O: 305-443-6163/F: 305-443-5635
   Email: service@patinolaw.com
   *Attorneys for The Courtyards at
   Hollywood Station Homeowners Association, Inc*

4. HINSHAW & CULBERTSON LLP
   RONALD L. KAMMER
   Florida Bar No. 360589
   rkammer@hinshawlaw.com
   DANIEL HENTSCHEL
   Florida Bar No. 123564
   dhentschel@hinshawlaw.com
   2525 Ponce de Leon Boulevard
   4th Floor
   Coral Gables, FL 33134
   Tel: 305-358-7747
   Fax: 305-577-1063
   *Attorneys for Great American Alliance
   Insurance Company, a Nationwide
   Company*